IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

MPS ENTERTAINMENT, LLC
A New Jersey Limited Liability Company

    Plaintiff,                    CASE NO.: 1:11-CV-21765

vs.

ROBERT M. FLETCHER and
FRANK SORRENTINO

    Defendants,
_____/

**PLAINTIFF'S VERIFIED EMERGENCY**
**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, MPS ENTERTAINMENT, LLC, ("MPS" or "Plaintiff"), by and through counsel and pursuant to Federal Rule of Civil Procedure 65(a), hereby moves on an emergency basis for a preliminary injunction and submits the following memorandum of law in support:

**I.    INTRODUCTION**

MPS is suing Defendants for Trademark Infringement, Unfair Competition and False Designation of Origin arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§1114(1) (Trademark Infringement) and 1125(a) (Unfair Competition and False Description), for Unfair Business Practices arising under Fla. Stat. §§ 495.131, 495.151 and 540.08, and for injury to business reputation. This case arises out of Defendants'

1

unlawful use of Plaintiff's registered trademark, name and likeness to promote and advertise Defendants' upcoming book, videos and other commercial ventures.

MPS is an entity controlled and owned by Michael Sorrentino ("Michael") and his brother, Marc Sorrentino. Michael is an internationally known TV personality, who stars in the MTV series, Jersey Shore, and has appeared on a variety of other shows, including Dancing with the Stars, The Tonight Show and many other nationally televised programs. The brothers formed MPS to develop, market, distribute and license goods and services relating to Michael under his registered trademark, "The Situation" (the "Mark").

Defendant, Robert M. Fletcher ("Fletcher"), conducts business from Boca Raton, Florida through a complicated web of related entities purporting to provide services as both literary agents and book publishers. Fletcher's entities are his own alter-egos as they are not registered to do business in Florida, have no offices and apparently operates only in the "clouds" of cyberspace. Indeed, Fletcher has testified that his office is in his laptop computer. See Declaration of Robert Fletcher, Ex. A 12:21-25. According to a complaint filed by Florida's Attorney General based on more than 400 of consumer complaints against Fletcher, Fletcher is a fraudster and his businesses are nothing more than elaborate scams, designed to rip off naïve and unsuspecting new authors. In short, Fletcher solicits neophyte writers to send him their original works, then he repeatedly charges them increasing fees for various "services", including review, editing, publishing, etc., but delivers absolutely nothing in return, leaving his customers demoralized and poorer for their efforts.

2

**EHRENSTEIN CHARBONNEAU CALDERÍN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

One such new author is Defendant, Frank Sorrentino ("Frank"). Frank is Michael Sorrentino's estranged birth father. With the help of Fletcher's shell company, Strategic Book Publishing & Rights Agency, Frank is purportedly about to publish a "tell-all" book titled "Confrontation with the Situation", has recently published a YouTube style video series of the same name and he purports to engage in other commercial ventures intended to exploit and trade upon the Mark and goodwill of Plaintiff and to use Michael's name, image and likeness for advertising purposes. Frank's videos consist of a series of scathing, expletive filled tirades in which he belittles Michael and claims to reveal what "The Real Situation" behind Michael's past.

To promote and advertise the book and their other alleged commercial ventures, Fletcher and Frank established a website in May of 2011 at www.theconfrontationsite.com (the "Website"). The Website uses the Mark as well as Michael's name and likeness to advertise and promote the upcoming release of the book and to pitch a reality TV show and other commercial ventures. For example, a press release posted on the Website uses the Mark no less than 4 times in an attempt to generate hype and publicity for the book and the Website prominently features the name, image and likeness of Michael. Defendants' publicity campaign has worked. Frank's videos have gone viral in a matter of days, generating thousands of stories on the Internet. See Declaration of Richard Wolfe ("Wolfe Dec."), Ex. B attaching only the first 25 pages of Google search results.

The activities of Defendants constitute willful and intentional infringement of the Plaintiff's common law and intellectual property rights under both state and federal laws.

3

EHRENSTEIN CHARBONNEAU CALDERÍN
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

Defendants have used the actual name, likeness, and Mark of Michael in advertising and promoting their ventures. Defendants' unlawful activities have caused and will continue to cause irreparable injury to Plaintiff. Among other things, Defendants have: (1) wrongfully capitalized on Plaintiff's goodwill, fame, reputation and commercial value of Plaintiff's Marks by using the Marks without consent; (2) used the Plaintiffs' name and likeness to advertise the sale of Defendants' book and other commercial ventures without permission of Plaintiff. While Defendants are free to publish their intended book, they simply cannot exploit Plaintiff's Mark or Michael's name image and likeness for purposes of advertising and promoting that book.

**II.    ARGUMENT**

    A.    ENTRY OF A PRELIMINARY INJUNCTION
              IS APPROPRIATE AND NECESSARY

To obtain a preliminary injunction in this Circuit, Plaintiff must establish that: (1) there is a likelihood that Plaintiff will succeed on the merits at trial, (2) it will suffer irreparable injury if Defendants are not enjoined; (3) the injury to Plaintiff outweighs the threatened harm an injunction would cause to Defendants; and (4) the injunction would not disserve the public interest. <u>Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.</u>, 51 F.3d 982, 985 (11th Cir. 1995).

        1.    Success on the Merits is Likely.

        (a)    <u>Defendants are liable for Trademark Infringement and Violation of FS. 540.08</u>

4

Title 15 U.S.C § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendants' use of reproduction, counterfeit, copy, or colorable imitation of a mark which is likely to cause confusion, to cause mistake, or to deceive.  In order to prevail on its claim, Plaintiff must demonstrate: (1) it owns the mark at issue; (2) Defendants' use of the mark is without authorization from Plaintiff; and (3) Defendants' use is likely to cause confusion, mistake, or deception as to the source, affiliation or sponsorship of Defendants' goods.  <u>Babbit Electronics, Inc. v. Dynascan Corp.</u>, 38 F.3d 1161, 1178 (11th Cir. 1984).

Plaintiff's evidence clearly shows the requirements of section 1114 have been met.  First, Plaintiff's Marks are owned by Plaintiff and Defendants do not have Plaintiff's authorization to use the Mark on Defendants' Website, book or any other venture.  Second, a likelihood of confusion or deception exists between Plaintiff's legitimate attempts to license its Mark and Michael's name, image and likeness and the Defendants unauthorized exploitation of the same for advertising purposes. See <u>G. Force Entertainment Inc. v. G. Force Partners Inc.</u>, 2000 WL 1346699 (M.D. Fla. 2000).

Defendants have also used the name and likeness of Michael (which is controlled by Plaintiff) on their Website to advertise the book and videos to the general public in violation of FS 540.08, for which injunctive relief is an appropriate remedy.  See, e.g., <u>Stockwire Research Group, Inc. v. Lebed</u>, 577 F.Supp.2d 1262, 1269 (S.D. Fla. 2008) (granting injunctive relief on section 540.08 claim).  Specifically, section 540.08 provides in relevant part: "In the event the consent required in subsection (1) is not obtained, the person whose name, portrait, photograph, or other likeness is so used . . . may bring an

5

action to enjoin such unauthorized publication, printing, display or other public use. . ." Because Defendants have misappropriated Plaintiff's name, likeness and image to promote their book and videos, injunctive relief is appropriate under section 540.08.

    b) <u>Plaintiffs Have a Substantial Likelihood of Prevailing at Trial on the Merits of Their Claims for Trademark Infringement and Violations of FS. 540.08</u>.

To prevail on these claims, a plaintiff must establish that: (a) he or she has trademark rights in the mark or name at issue, distinctive enough to deserve protection; (b) that the mark was used without his or her consent; and (c) that such unauthorized use is likely to cause confusion, mistake or deception. See 15 U.S.C. §§ 1114, 1125(a), <u>Home Box Office, Inc. v. Showtime</u>, 832 F.2d 1311, 1314 (11th Cir. 1987). Where a mark is arbitrary, such as a performer's stage name, i.e. "The Situation", it is entitled to great protection, for the more distinctive a given mark as the higher level of trademark protection it warrants. See <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 120 L.Ed.2d 615, 112 S.Ct. 2753 (1992). Where, as here, a defendant uses plaintiff's exact mark, infringement is assumed.

Florida laws also favors the entry of a temporary injunction as an appropriate remedy in cases of unfair competition, common law trademark claims, and violations of FS 540.08. See, e.g., <u>M&E Distributors Inc. v. Worley</u>, 840 So.2d 457 (Fla. 4th DCA 2003). It is well-established that section 540.08 prevents the use of a person's name or likeness to directly promote the product or service of a publisher. <u>Tyne v. Time Warner Entertainment Co., L.P.</u>, 901 So.2d 802, 807-808 (Fla. 2005); <u>Loft v. Fuller</u>, 408 So.2d

6

619, 622-623 (Fla. 4th DCA 1981). As such, Defendants conduct falls squarely within the scope of the conduct section 540.08 is aimed at protecting against.

    2. <u>Irreparable Injury must be presumed.</u>

  Plaintiff has shown that it is likely to suffer irreparable harm in the absence of a preliminary injunction. Harm to business goodwill and reputation is unquantifiable and generally considered irreparable. See <u>BellSouth Telecommunications, Inc. v. MCI Metro Access Transmission Services, LLC</u>, 425 F.3d 964, 970 (11th Cir. 2005) ("the loss of customers and goodwill is an irreparable injury"); <u>Rent-A-Center, Inc. v. Canyon Tele. & Appliance Rental, Inc.</u>, 944 F.2d 597, 603 (9th Cir. 1991) ("Intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."). Here, the on-going damage to Plaintiff's reputation and customer goodwill caused by Defendants' use of Plaintiff's Mark, name and likeness to promote its scandalous book and videos constitutes irreparable harm. See <u>MySpace, Inc. v. Wallace</u>, 498 F.Supp.2d 1293, 1305 (C.D.Cal.2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable.").

    3. <u>The preliminary injunction is in the best interest of the public.</u>

  Public policy strongly favors allowing the courts to fashion remedies which will take all the economic incentive out of trademark infringement. *See* <u>Playboy Enterprises v. Baccarat Clothing</u>, 692 F.2d 1272, 1275 (9th Cir. 1982). The public is entitled to be free from deception and confusion. <u>Bellsouth Advertising and Publishing Corp. v. Real Color Pages Inc.</u>, 792 F.Supp. 775, 780 (M.D. Fla. 1991) ("in a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests

**EHRENSTEIN CHARBONNEAU CALDERÍN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

are paramount.") Here, the public's attention is misled and diverted from legitimate interests by Defendants' promotional use of Plaintiff's Mark and Michael's name, image and likeness by the diversion of web traffic to Defendants' scandalous Website.

### 4. Balance of Hardships

The Plaintiff has spent substantial time, money and other resources to develop Michael's reputation and fan base. Should Defendants be permitted to continue using his goodwill and reputation to market and advertise their book, videos and other commercial ventures, whose sole purpose is to cash in on Plaintiff's name by arousing the public's base curiosity, Plaintiff will continue to suffer immediate and substantial damage to MPS's goodwill. To the contrary, Defendants will suffer no legitimate hardship in the event a preliminary injunction is issued. The issuance of an injunction will serve to prevent Defendants from continuing to engage in illegal activities. In this case, the injury to Plaintiff outweighs the harm the injunction may cause to the Defendants. In this factor, the Court can consider the intent of the defendants and the harm to the Plaintiff's well-established goodwill and well-earned business reputation.

### 5. Bond Amount

Plaintiff requests this Court set a bond in the amount of one thousand dollars ($1,000.00) in connection with the issuance of the preliminary injunction in this matter. The Website in question is a low budget, bare bones site set up to generate maximum traffic with little effort or expenditure. Accordingly, a one thousand dollar ($1,000.00) bond will more than adequately protect the Defendants' interests.

### III. CONCLUSION

8

**EHRENSTEIN CHARBONNEAU CALDERÍN**
501 Brickell Key Drive · Suite 300 · Miami, FL 33131 · T. 305.722.2002 · F. 305.722.2001 · www.ecclegal.com

In view of the foregoing, Plaintiff respectfully requests that this Court enter a Preliminary Injunction in the form of the attached Proposed Findings of Fact and Conclusions of Law.

DATED this 16 day of May, 2011.

### VERIFICATION

The undersigned hereby verifies, under penalty of perjury, the truth and accuracy of the allegations contained above.

MARC SORRENTINO, Manager
MPS ENTERTAINMENT, LLC

Dated this 16 day of May, 2011.

Respectfully Submitted,

EHRENSTEIN CHARBONNEAU CALDERIN
Counsel for Plaintiff
501 Brickell Key Drive, Suite 300
Miami, Florida 33131
Telephone:   (305) 722.2002
Facsimile:   (305) 722.2001

　　　　　/s/ Richard C. Wolfe
RICHARD C. WOLFE, ESQ.
Florida Bar No: 355607

9